**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION**

RONALD MIZELL                                                                               PLAINTIFF

vs.                                                                    Civil Action No. 3:07-cv-185-HTW-LRA

BP AMERICA PRODUCTION COMPANY                                              DEFENDANT

**ORDER DENYING REMAND**

**I. Introduction**

Before this court is Plaintiff Ronald Mizell's ("Mizell") motion to remand [docket # 6] this cause to the Circuit Court of Pike County, Mississippi.  Mizell instituted this negligence action under Title 46 U.S.C.A. § 30104 ("the Jones Act")[1] in that state court and contends that this lawsuit should be returned there.  Mizell argues that this cause falls under the general rule that Jones Act cases may not be removed from state courts. Title 46 U.S.C.A. § 30104; *Fields v. Pool Offshore, Inc.*, 182 F.3d 353, 356 (5th Cir.

---

[1] Congress codified and renumbered the provisions of the federal maritime code under Title 46, effective October 6, 2006.  The Jones Act, which used to appear at 46 U.S.C. app. § 688, is now at 46 U.S.C. § 30104.  *See* Pub. L. No. 109-304, § 6(c), 120 Stat. 1510 (2006). The Jones Act states, in pertinent part:

> (a) A seaman injured in the course of employment [...] may elect to bring a civil action at law, with the right of trial by jury, against the employer[...]; (b) An action under this section shall be brought in the judicial district in which the employer resides or the employer's principle office is located.

1

1999); *Burchett v. Cargill, Inc.*, 48 F.3d 173, 175 (5th Cir. 1995).  BP America Production Company ("BP"), which  removed this matter to this court pursuant to Title 28 U.S.C. §§ 1441 and 1446, opposes Mizell's motion to remand.  BP contends that Mizell fraudulently pleaded this action under the Jones Act to prevent removal.  Further, BP says that this court has subject matter jurisdiction of this matter because Mizell's negligence claim is cognizable  under Title 43 § 1333(a), the Outer Continental Shelf Lands Act ("the OCSLA").[2]

## II. Statement of Relevant Facts

Mizell worked as a crewmember on the Holstein, a structure owned and operated by BP.  An oil drilling and production facility located in the Gulf of Mexico, approximately 125 miles southeast of New Orleans, Louisiana, in the Green Canyon Area Block 645 ("Block 645"), the Holstein sits in approximately 4,344 feet of water.  The Holstein is attached to the seabed on the Outer Continental Shelf ("OCS") by sixteen chain / wire mooring lines which connect the Holstein to sixteen massive pilings that were driven into the seafloor of the OCS.  Two permanent pipelines extend from the Holstein to the OCS.  The Holstein is also connected to the OCS seafloor by twenty-nine riser pipes and fourteen tubing string pipes which extend from the platform to the individual wells drilled into the seafloor.

The Holstein was constructed in its location by a system of cranes and is

---

[2] Title 43 U.S.C. § 1349(b)(1) states, in pertinent part: except as provided in subsection (c) of this section, the district courts of the United States shall have jurisdiction of cases and controversies arising out of, or in connection with (A) any operation conducted on the outer Continental Shelf which involves exploration, development, or production of the minerals, of the subsoil and seabed of the outer Continental Shelf[...]

capable of limited movement because of the structure's connection to the OCS seafloor. According to the undisputed facts submitted by BP, the Holstein can move no further than 195 feet during the designed hurricane event (a storm with a return period of 100 years). In order to move a significant distance, the Holstein would have to be disassembled by cranes, disconnected from the mooring lines and risers connecting the Holstein to the ocean floor, and pulled by a fleet of towing tugs. BP claims, and Mizell does not contest, that the Holstein will remain at its location in Block 645 for the productive life of its wells, which BP estimates to be 20-30 years.

Mizell's duties on the Holstein included lifting and carrying heavy equipment up and down stairs. On several occasions, Mizell requested that BP provide him a crane and a personnel basket to assist him in carrying the equipment. Mizell also asked BP to install a utility elevator on the Holstein. BP did not satisfy either of Mizell's requests.

On April 30, 2006, Mizell was allegedly severely injured while lifting and carrying a hydraulic pump device. Mizell asserts that on the day of his injury the Holstein was understaffed and that BP should have provided him assistance with carrying the pump. Mizell asserts that BP is liable for negligently ordering him to work without proper equipment and without proper assistance to perform his duties.

### III.   Analysis

Generally, properly pleaded Jones Act claims are not removable. *Fields*, 182 F.3d at 356; *Burchett*, 48 F.3d at 175. Fraudulently pleaded Jones Act claims, however, do not bar removal. *Fields*, 182 F.3d at 356 (citing *Burchett*, 48 F.3d at 175) ("defendants may pierce the pleadings to show that the Jones Act claim has been

fraudulently pleaded to prevent removal"). While district courts may not pretry a case to determine removal jurisdiction, the courts "are authorized to use a summary judgment-like procedure for disposing of fraudulent pleading claims." *Burchett*, 48 F.3d at 175. Thus, the party opposing the motion to remand in a Jones Act case must demonstrate that there is no possibility that the plaintiff would be able to establish a cause of action under the Jones Act. *Id*. "Accordingly, in determining whether a plaintiff's claims are baseless, the district court must resolve all disputed questions of fact and any ambiguities in the current controlling substantive law in favor of the plaintiff." *Id*.

In order to recover as a seaman under the Jones Act, Mizell must prove that he suffered an injury in the course of his employment while he was a seaman. Title 46 U.S.C § 30104; *Fields*, 182 F.3d at 357. "In order to be a seaman, an individual 'must have a connection to a vessel in navigation [...] that is substantial in terms of both its duration and its nature.'" *Id*. (quoting *Harbor Tug & Barge Co. v. Papai*, 520 U.S. 548 (1997)). Thus, a Jones Act claim necessarily must involve a vessel. *Burchett*, 48 F.3d at 176 ("Plaintiffs, therefore, cannot possibly recover on their Jones Act claim unless [the structure at issue] is a vessel.").

Courts determine whether a structure is a Jones Act vessel by looking to "the purpose for which the craft is constructed and the business in which it is engaged." *Id*. The Fifth Circuit recognizes a difference "between 'work platforms' that are designed for primarily stationary residence and true vessels." *Fields*, 182 F.3d at 357 (citing *Cope v. Vallette Dry-Dock Co.*, 119 U.S. 625 (1887)). Where courts have determined that floating platforms were not vessels, those courts usually discerned three factors:

4

> (1) the structures involved were constructed and used primarily as work platforms; (2) they were moored or otherwise secured at the time of the accident; and (3) although they were capable of movement and were sometimes moved across navigable waters in the course of normal operations, any transportation function they performed was merely incidental to their primary purpose.[3]

*Burchett*, 48 F.3d at 177 n.2 (citing *Bernard v. Binnings Constr. Co., Inc.*, 741 F.2d 824, 831 (5th Cir. 1984); *Ellender v. Kiva Constr. & Eng'g, Inc.*, 909 F.2d 803, 806 (5th Cir. 1990); *Daniel v. Ergon, Inc.*, 892 F.2d 403 (5th Cir. 1990); *Ducrepont v. Baton Rouge Marine Enters., Inc.*, 877 F.2d 393, 395 (5th Cir. 1989)).

**A.   The Holstein was constructed and used primarily as a work platform.**

In *Fields*, the court found that the structure in question there, the Neptune Spar, was used primarily as a work platform in a specific, fixed location for the forseeable future. *Fields*, 182 F.3d at 358. The court, relying upon the defendants' affidavits, found that there were no plans to move the Neptune Spar until the oil fields at the Neptune Spar's location were exhausted. *Id*. There, the defendant energy company predicted that the oil field in question would remain productive for another fifteen years from the date of the plaintiff-employee's injury. *Id*.

Here, this court finds that the Holstein is used primarily as a work platform. BP has provided undisputed evidence that the oil wells at the Holstein's location have an

---

[3] The Fifth Circuit has identified a number of additional factors that courts may use in determining whether a structure is a vessel under the Jones Act. These factors include: (1) the intention of the owner to move the structure on a regular basis; (2) the ability of the submerged structure to be refloated; and (3) the length of time the structure has remained stationary. The courts have also looked to the presence of (1) navigational aids; (2) a raked bow; (3) lifeboats and other life-saving equipment; (4) bilge pumps; (5) crew quarters; and (6) registration as a vessel with the Coast Guard. *Burchett*, 48 F.3d at 177 n.2; *Johnson v. ODECO Oil & Gas, Co.*, 864 F.2d 40, 43 (5th Cir. 1989).

estimated productive life of twenty to thirty years.  Similar to the Neptune Spar situation, BP plans to use the Holstein to exploit resources from its wells until those resources are exhausted.  Therefore, the Holstein, like the Neptune Star, is primarily used as a work platform.

      **B.**      **The Holstein was moored or otherwise secured at the time of the accident.**

The *Fields* court found that the Neptune Spar was secured to the ocean floor using an "elaborate system that guarantees movement will be a difficult and expensive undertaking." *Id*.  ("[T]he defendants have at presumably considerable expense sunk massive (180 foot) pilings into the ocean floor, and attached the spar to these pilings by means of similarly impressive chain lines.").  Further, the court found that the underwater infrastructure of anchoring pipes attached to the Neptune Spar evidenced a relatively permanent commitment to the location at which it rested at the time of the plaintiff's injury. *Id*.

Similarly, the Holstein is attached to the seafloor of the OCS by a system of sixteen chain / wire mooring lines which are connected to sixteen massive pilings driven deep into the ocean floor.  The Holstein is further connected to the OCS by a number of pipes extending directly from the Holstein's platform above the water surface to wells drilled in the seafloor.  In order to move the Holstein a significant distance, the mooring lines and pipes would have to be disconnected from the pilings and oil wells, respectively.

C. **Although the Holstein is capable of movement, any transportation function carried out by the Holstein is merely incidental to its primary purpose.**

The Holstein is capable of movement, but any such movement would be only incidental to its primary purpose as an oil drilling and production facility. The Neptune Spar, in the *Fields* case, could be moved a limited range of 250 feet in any direction for work purposes. *Id.* at 359. The record before this court reflects that the Holstein is capable of a much more limited range of movement. Mizell does not dispute that the Holstein is capable of moving only 195 feet. According to BP, the Holstein's range of movement is not designed for transportation or other work. The Holstein is allowed its 195 feet of movement as a precaution for the occurrence of the designed hurricane event. Further, although the Holstein will be moved after its wells' resources have been exhausted, the Holstein will have to be taken apart and towed to its new location. This sort of theoretical possibility of more lengthy movement, in an estimated twenty to thirty years, "cannot render irrelevant the structure's current and long-term immobility." *Id*.

D. **The Holstein's Status Under The Jones Act**

The Holstein is not a Jones Act vessel under the Fifth Circuit's three-prong test. This court, therefore, needs not address the additional factors set forth in *Burchett*, 48 F.3d at 177 n.2. Because the Holstein is not a vessel, Mizell's Jones Act claim is baseless, a finding which additionally sinks plaintiff's argument against removal on account of his Jones Act claim. This development does not mean, however, that this federal court should automatically retain this lawsuit. This court is one of limited subject matter jurisdiction and removing defendants still must show that this court has diversity,

Title 28 U.S.C. § 1332,[4] or federal question jurisdiction, Title 28 U.S.C. § 1331,[5] over this matter.

### IV. Subject Matter Jurisdiction

In the motion before the court, Mizell claims that remand is proper here only because its Jones Act claim bars removal. Mizell does not argue that absent the Jones Act claim this court would still lack subject matter jurisdiction over this cause. This court finds (1) that Mizell has no Jones Act claim in this matter and (2) that this court has both diversity and federal question jurisdiction over this suit.

The record reveals that Mizell, the plaintiff, is a resident of Mississippi and BP, the sole defendant, is an Illinois resident corporation. In addition to the requirement of complete diversity, this suit meets the amount-in-controversy requirement, as Mizell seeks damages in excess of $75,000.

We turn next to federal question jurisdiction. The OCSLA "expressly grants subject matter jurisdiction to the federal courts over cases and controversies 'arising out of or in connection with' any operation involving the 'development' of minerals on the [OCS]." Title 43 U.S.C. § 1349(b)(1)(A); *Texaco Exploration & Prod., Inc. v. Amclyde Engineered Prod. Co., Inc.*, 448 F.3d 760, 768 (5th Cir. 2006). "'Development' is

---

[4]Title 28 U.S.C. § 1332 provides in pertinent part:

   (a) The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between– (1) citizens of different States; ...

[5]Title 28 U.S.C. § 1331 provides:

   The district courts shall have original jurisdiction of all civil cases arising under the Constitution, laws, or treaties of the United States.

defined by OCSLA as 'those activities which take place following discovery of minerals in paying quantities, including geophysical activity, drilling, platform construction and operation of all onshore support facilities, and which are for the purpose of ultimately producing the minerals discovered.'" Title 43 U.S.C. § 1331(l);  *Amclyde*, 448 F.3d at 768.  "Such federal question jurisdiction under OCSLA is, by virtue of its express statutory provision, independent of any additional maritime basis for federal jurisdiction." *See* U.S. CONST. Art. III, § 2; 28 U.S.C. § 1333;  *see also Amclyde*, 448 F.3d at 768*.*  Insofar as Mizell's injury occurred on the OCS in connection with "an operation [...] involv[ing] [...] development or production of the minerals of the subsoil and seabed of the OCS, Mizell's claims come within the purview of the OCSLA.

### V.    Mizell's Motion for Establishment of a Discovery Period

On May 18, 2007, BP filed its Memorandum in Opposition to Mizell's Motion to Remand.  Seven weeks later, on July 6, 2007, Mizell filed a Motion for the Establishment of a Discovery Period and for Additional Time to Respond to BP's Memorandum in Opposition [docket # 11].  Pursuant to Local Rule 7.2(D),[6] Uniform Local Rules of the United States District Court for the Southern District of Mississippi, this court finds untimely Mizell's Motion for Establishment of a Discovery Period.

---

[6]Local Rule 7.2(D) of the Uniform Local Rules of the United States District Court for the Southern District of Mississippi provides in pertinent part:

> Counsel for movant desiring to submit a rebuttal memorandum may do so within five days after the service of the respondent's memorandum.  A request for extension of time shall be made in writing to the judge before whom the motion is noticed.  Failure to timely submit the required motion documents may result in the denial of the motion.

**CONCLUSION**

In summary, this court finds that plaintiff's complaint does not properly raise a Jones Act claim, which if properly pled would bar removal. The court further finds that this court has proper subject matter jurisdiction over this dispute, both under diversity of citizenship, § 1332, and federal question, § 1331.

IT IS, THEREFORE, ORDERED AND ADJUDGED that the plaintiff's motion to remand [docket # 6] and for the establishment of a discovery period [docket # 11] are denied.

**SO ORDERED AND ADJUDGED, this the 26th day of March, 2008.**

**s/ HENRY T. WINGATE
CHIEF UNITED STATES DISTRICT JUDGE**

Civil Action No. 3:07-cv-185 HTW-LRA
Order Denying Remand